# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| HECTOR LABOY (#B-63282), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 CV 10771 |
| | ) | |
| CORRECTIONAL OFFICER CLEMENTS, | ) | |
| et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Hector LaBoy, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. LaBoy claims that Defendants, correctional officers at the Stateville Correctional Center, violated LaBoy's constitutional rights by harassing and retaliating against him for his grievances and for refusing to cooperate in internal affairs investigations. This matter is before the Court for ruling on Defendants' motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Defendants' motion and dismisses this lawsuit in its entirety.

## BACKGROUND

### I.     Northern District of Illinois Local Rule 56.1

"Under the Local Rules of the Northern District of Illinois, a party filing a motion for summary judgment under Fed. R. Civ. P. 56 must serve and file 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) (citation omitted); *Fleming v. Illinois Dep't of Corr.*, No. 16 CV

50074, 2017 WL 1833207, at *1 (N.D. Ill. May 8, 2017). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing N.D. Ill. R. 56.1(b)(3)(B)); *Fabiyi v. McDonald's Corp.*, No. 11 CV 8085, 2014 WL 985415, at *1 (N.D. Ill. Mar. 13, 2014), *aff'd* 595 F. App'x 621 (7th Cir. 2014)). The opposing party may also present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

Consistent with the Local Rules, Defendants filed a Statement of Material Facts together with their motion for summary judgment. (*See* R. 40, Defts. Stmt. of Facts.) Each substantive assertion of fact in Defendants' Local Rule 56.1(a)(3) Statement is supported by evidentiary material in the record. Also in accordance with the Local Rules, Defendants filed and served on LaBoy a Local Rule 56.2 Notice, which explained in detail the requirements of Local Rule 56.1. (R. 44, Defendants' "Notice Pursuant to Local Rule 56.2" / "Notice to Pro Se Litigant Opposing Motion for Summary Judgment.")

Despite Defendants' admonitions, LaBoy's response to their Statement of Facts is deficient in multiple respects. First, many of LaBoy's responses are devoid of citations to the evidence (*see, e.g.*, Plaintiff's Response to Defendants' L.R. 56.1 Statement, ¶ 5-1), while others make only general reference to his exhibits. (*Id.*, ¶ 6-2) (citing, generally, "Exhibits A through E.") But as noted above, "[t]he non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Kelley v. Hardy*, No. 14 CV 1936, 2016 WL 3752970,

at *1 (N.D. Ill. July 14, 2016) (citing *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014));

*see also* L.R. 56.1(b)(3)(B) (N.D. Ill.)

Furthermore, legal arguments, suppositions, and conclusions of law are not "facts."    *See*

*Judson Atkinson*, 529 F.3d at 382 n.2 ( "It is inappropriate to make legal arguments in a Rule 56.1

statement of facts.").    Nor is the "response to a statement of facts ... the place for purely

argumentative denials, and courts are not required to 'wade through improper denials and legal

arguments in search of a genuinely disputed fact.'"    *Almy v. Kickert Sch. Bus Line,* No. 08 CV

2902, 2013 WL 80367, at *2 (N.D. Ill. Jan 7, 2013) (internal citation omitted) (quoting *Bordelon

v. Chi. Sch. Reform Bd. of Trs*., 233 F.3d 524, 529 (7th Cir. 2000)).

In addition, LaBoy sometimes adds information that he should have set forth in a separate

statement of additional facts pursuant to Local Rule 56.1(b)(3)(c)    *See, e.g., McGuire v. United

Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998); *De v. City of Chicago*, 912 F. Supp. 2d 709, 714-

15 (N.D. Ill. 2012) (collecting cases).    "Under settled law, facts asserted in a [summary judgment

response] but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary

judgment motion."    *Beard v. Don McCue Chevrolet, Inc.*, No. 09 CV 4218, 2012 WL 2930121,

at *5 (N.D. Ill. Jul. 18, 2012); *see also Ciomber*, 527 F.3d at 643-44 (affirming the district court's

refusal to consider additional facts set forth in the non-movant's Local Rule 56.1(b)(3)(B)

response).

LaBoy, a relatively experienced federal litigator, has taken at least one of his multiple prior

lawsuits to summary judgment.    *See LaBoy v. Ghosh*, No. 11 CV 3950, 2013 WL 182815, at *1

(N.D. Ill. Jan. 17, 2013).    Regardless, a plaintiff's *pro se* status does not excuse him from

complying with these rules.    *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *cf. Morrow

*v. Donahoe*, 564 F. App'x 859, 860 (7th Cir. 2014) (unpublished opinion) (citations omitted); *Boyce v. Martella*, No. 13 CV 6526, 2014 WL 5766112, at *3 (N.D. Ill. Nov. 4, 2014) ("there is no reason to excuse [plaintiff] from complying with Local Rules 56.1 and 56.2, which govern the format of motions for summary judgment and the notice that *pro se* litigants must receive when an opposing party moves for summary judgment."). Furthermore, the Court granted Plaintiff almost four months to respond to Defendants' summary judgment motion.

A district court is entitled to decide a motion for summary judgment based on the factual record outlined in the Local Rule 56.1 statements. *Perez v. Thorntons, Inc.*, 731 F.3d 699, 712 (7th Cir. 2013) (citation omitted); *see also Cracco*, 559 F.3d at 632 ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules.") (citations omitted). As LaBoy has essentially failed to controvert Defendants' facts, the Court may deem those facts admitted for summary judgment purposes. *See, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

With the above standards in mind, the Court has incorporated LaBoy's factual assertions to the extent that he could properly testify about the matters asserted, as long as those statements would be admissible at trial pursuant to the rules and have bearing on the Court's analysis. *See* Fed. R. Evid. 602 (testimony must be based on personal knowledge); Fed. R. Civ. P. 56(c)(4) (affidavits or declarations in support of or opposition to a motion must be based on personal knowledge, and must set out facts that would be admissible in evidence). For the sake of simplicity, the Court will refer to Defendants' Statement of Facts rather than the evidence in the

record where LaBoy does not contest those factual assertions. The Court will cite the actual evidence where LaBoy arguably disagrees with, or attempts to clarify, Defendants' representations.

## II.    Relevant Facts

Plaintiff Hector LaBoy is an Illinois state prisoner. (Dkt. 43, Defendants' Local Rule 56.1 Statement of Uncontested Facts ("Defts. SOF"), ¶ 1.) LaBoy was incarcerated at the Stateville Correctional Center ("Stateville") at the time of the events giving rise to this action. (*Id.*) LaBoy is currently housed at the Lawrence Correctional Center. (Dkt. 50, Plaintiff's Change-of-Address Notice.) Defendants Eric Michalek, Xavier Taylor, and Joshua Clements were intelligence officers at Stateville during the relevant time period. (Defts. SOF, ¶ 3.)

One of the primary responsibilities of intelligence officers is to conduct investigations into the prison activities of so-called "security threat groups" ("STGs"). (Dkt. 43-4, Defendants' Exhibit D, Declaration of Joshua Clements, at ¶ 2; Dkt. 43-5, Defendants' Exhibit E, Declaration of Eric Michalek, at ¶ 15.) A "security threat group" is more commonly known as a "gang." (*Id.*)

It is of paramount concern to the IDOC that prison employees detect and prevent gang activity in all of its prisons. (Defts. SOF, ¶ 50.) Prevention of gang activity at Stateville and other maximum security prisons is particularly important because offenders at those facilities usually have a demonstrated history of violent and/or predatory behavior. (*Id.*, ¶ 51.) In Clements' experience, prison gangs pose a "serious and continuous" threat to the safety and the security of everyone in the prison. (*Id.*, ¶ 48.) STG activity often includes plots to physically harm, or even kill, inmates who belong to rival gangs. (*Id.*, ¶ 49.)

LaBoy maintains that prison officials "exaggerate" their preoccupation with STGs because he claims never to have personally known of an instance where rival gangs fought each other, rioted, or murdered anyone. (Plaintiff's Response to Defendants' L.R. 56.1 Statement, ¶ 5-1.) LaBoy additionally asserts that he himself has never been disciplined for violence or for predatory behavior. (*Id.*, ¶ 5-2.)

To combat STG activity, intelligence officers at Stateville regularly conduct inmate interviews. (Deft. SOF, ¶ 52.) Prison officials have found offender interviews to be one of the Intelligence Unit's most effective tools. (Defts. SOF, ¶ 53.) The many reasons for interviewing offenders include (1) when officials suspect an offender of engaging in STG activity, (2) when they suspect an inmate of planning or participating in otherwise "prohibited conduct" that threatens the security of the institution; and (3) when authorities have reason to believe an inmate's own safety may be endangered.[1] (*Id.*, ¶ 54.) It is—and was, at the time of LaBoy's tenure at Stateville—"common" for offenders to be summoned from their cellhouse to speak to an intelligence officer. (Defts. SOF, ¶ 75.) The Intelligence Unit usually interviews at least one inmate, or group of inmates, a day. (*Id.*, ¶ 76.) Clements and Michalek typically interview between 30 and 40 offenders in any given month. (*Id.*, ¶ 77.)

Under IDOC rules, inmates must fully assist in prison investigations. (*Id.*, ¶ 59.) Correctional officials require prisoners to cooperate in prison investigations whether the inquiry

---

[1] LaBoy disputes Defendants' rationale, claiming that investigators often have ulterior motives, and that inmate interviews frequently "backfire." (Pltff. Response to Defts. L.R. 56.1 Statement, ¶ 5-3.) But LaBoy cannot testify about the operation of others' minds, and he lacks the firsthand knowledge to question either the reasons intelligence staff calls inmates for interviews, or the overall success of those interviews. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). LaBoy provides no evidence to refute Defendant Clements' affidavit concerning the general purposes of inmate interviews.

pertains to the offender's own conduct or that of another individual.   (Clements Aff., ¶ 10.)   An inmate who refuses to cooperate in a prison investigation may face discipline for his refusal to provide information to investigators.   (Defts. SOF, ¶ 60.)

Clements admits that he interviewed LaBoy on "a number of occasions" concerning STG activity while LaBoy was incarcerated at the Stateville Correctional Center.   (*Id.*, ¶¶ 46, 73, 78.) Clements can recall "numerous" occasions when he called LaBoy to the Investigation Office, both alone and along with several other fellow inmates.   (Defts. SOF, ¶¶ 25. 46, 78.)   Michalek has no independent recollection of ever having spoken to LaBoy, (Michalek Aff., ¶ 16.), but he does not dispute that he may have interviewed LaBoy.

Clements' intelligence-gathering led him to believe that LaBoy had personal knowledge of at least one prison gang's STG activity at Stateville.   (*Id.*, ¶ 74; Clements Aff., ¶¶ 18, 20.)   LaBoy, however, denies that he either belongs to a gang or participates in STG pursuits.[2] (Pltff. Response to Defts. L.R. 56.1 Statement, ¶ 6-4.).   Whenever questioned, LaBoy invariably claimed to be unable to provide any information to intelligence investigators.   (*Id.*, ¶ 47.)

In July 2013, prison officials interviewed LaBoy concerning his use of three-way calling. (*Id.*, ¶ 35.)   During the interrogation, investigators asked LaBoy why he was calling his wife and asking her to search online for the housing placements of other prisoners.   (*Id.*, ¶ 36.)   LaBoy confessed that he had indeed made three-way calls to communicate with another inmate's family. (*Id.*, ¶ 38.)   LaBoy also admitted knowing that three-way calling violated prison rules.   (*Id.*, ¶

2 At his deposition, LaBoy indicated that he could not "recall" ever having formally renounced his gang affiliation.   (Defts. SOF, ¶ 42.)   In response to Defendants' motion for summary judgment, however, he found a document stamped October 2005 in which he wrote that, many years earlier, he had disavowed his gang membership.   (Plaintiff's Exhibit G, Declaration) ("I left the Spanish Cobras in the year 1994 and haven't been active since.").

37.)  LaBoy additionally conceded that he had asked his wife to find information relating to other offenders.  (*Id.*, ¶ 38.)  At the close of the investigation, Defendant Michalek issued LaBoy a disciplinary ticket that accused him of engaging in STG activity, making a dangerous communication, and three-way calling.  (*Id.*; *see also* Plaintiff's Exhibit K, "Offender Disciplinary Report.")

A prison adjustment committee found LaBoy guilty of two charges, abuse of privileges and violation of rules.  (Defts. SOF, ¶¶ 43, 44; (Plaintiff's Exhibit K.)  The disciplinary committee found LaBoy not guilty of engaging in gang or unauthorized organization activity, dangerous communications, or possession or solicitation of unauthorized personal information.  (*Id.*)  The Final Summary Report simply noted "Unsubstantiated" as to the dismissed charges.  (*Id.*)  LaBoy spent over a month in segregation.  (*Id.*)

Sometime after this incident, an internal affairs investigator questioned LaBoy about a gun that had supposedly been smuggled into the prison.[3]  (Defts. SOF, ¶ 45.)

Correctional officials may place an individual in investigative status for two principal reasons:  First, the prison may receive information that the offender faces imminent danger.  (*Id.*, ¶ 55.)  Second, officials may place an inmate in investigative status if he is suspected of wrongdoing and officials are in the process of conducting an investigation.  (*Id.*, ¶ 56.)  Offenders typically remain on investigative status for a 30-day period before either being released back into the general population (if the concern has been resolved), or to disciplinary segregation.[4]  (*Id.*, ¶¶ 57, 58.)

---

3 The summary judgment record provides no further details about this investigation.

4 LaBoy's mere statement that he "disagrees" with Defendants' representations is insufficient to create a triable issue of fact.  LaBoy provides no evidence whatsoever, other than the same, unsubstantiated

On February 5, 2014, Defendant Clements ordered LaBoy's placement on investigative status. (Defts. SOF, ¶ 10.) Clements asserts that he did so because the Intelligence Unit had received information that there was an inmate plan to attack LaBoy. (*Id.*, ¶ 11.) According to Clements, he placed LaBoy in segregation in order to protect him from the threat. (Clements Aff., ¶ 19.) Further, Clements states that he allowed LaBoy to leave segregation as soon as the threat receded. (*Id.*)

LaBoy claims that Clements never notified him that he was being placed on investigative status to protect him. (Pltff. Response to Defts. L.R. 56.1 Statement, ¶ 4-2.). LaBoy additionally maintains, without any basis for that contention, that it somehow "goes against Internal Affairs policy to protect offenders." (*Id.*, ¶ 5-5.). LaBoy likewise fails to provide a factual foundation for claiming that Clements sent him to segregation "for not cooperating." (*Id.*)

Clements recommended that LaBoy be removed from investigative status on March 10, 2014. (Defts. SOF, ¶ 13.) LaBoy spent 35 days in investigative segregation rather than the normal 30-day period. (*Id.*, ¶¶ 14, 16.) In response to LaBoy's ensuing grievance, his counselor would say only that he had been placed under investigation "in accordance with departmental policy." (Exhibit A to Cmplt.)

Defendants explain that disclosure of an offender's intelligence file poses "numerous" security concerns. (Defts. SOF, ¶ 62.) A major concern is that disclosure could reveal the identities of confidential informants, even if names were redacted. (*Id.*, ¶¶ 63-65.) Revealing the identity of informants would expose them to "an extraordinary risk of bodily harm." (*Id.*, ¶

---

allegation in his complaint, to support his assertion that "Defendants are known to abuse the placement of inmates under investigation to displace and chill Plaintiff and other inmates." (Pltff. Response to Defts. L.R. 56.1 Statement, ¶ 5-4.)

66.)   Furthermore, release of such records could reveal the IDOC's intelligence-gathering techniques.   (*Id.*, ¶ 67.)   If inmates were familiar with IDOC intelligence methodologies, they could more easily circumvent the Department's efforts to prevent illicit activity.   (*Id.*, ¶ 68.)

On July 1, 2014, Defendant Clements called LaBoy into his office for an interview.   (*Id.*, ¶ 19.)   LaBoy asserts that it is "common knowledge" that being called to speak to Internal Affairs for no apparent reason makes an inmate a target because the other inmates will suspect that he is a "snitch."   (*Id.*)   LaBoy sensed that Clements was attempting to portray him as an informant. (Exhibit B to Defendants' Summary Judgment Motion, Deposition of Hector LaBoy, at 82:1-17.) LaBoy has submitted affidavits from two fellow prisoners who confirm that they heard rumors that LaBoy was a snitch.   (Plaintiff's Exhibits B and CV to his Response to Defendants' Local Rule 56.1 Statement, Affidavits of Diego Rogue and Omar Aguilar, respectively.)   No harm actually came to LaBoy as a result of his interview with Clements, even though he believes that the threat "was there."   (Pltff. Response to Defts. L.R. 56.1 Statement, ¶ 6.)

On August 13, 2014, Stateville had a facility-wide lockdown.   (Deft. SOF, ¶ 21.)   During a Level-1 lockdown, "many if not (all) offender cells may be searched."   (*Id.*, ¶ 22.)   Clements has no independent recollection of searching LaBoy's cell on August 13, 2014.   (*Id.*, ¶ 24.). Clements, however, concedes that it would not be "unusual" for him to search an offender's cell if the Intelligence Unit were investigating that individual.   (*Id.*)

Following the lockdown, correctional officials moved LaBoy from his cell in the "low aggression" C-House to F-House, which held more aggressive inmates.   (*Id.*, ¶ 25.)   LaBoy received no reason for the cell change other than that the Internal Affairs Office had ordered the move.   (Pltff. Response to Defts. L.R. 56.1 Statement, ¶ 4-7.)

On November 6, 2014, Defendants called LaBoy into the Investigation Unit again to question him. (Defts. SOF, ¶ 27.) A few days later, Defendants Clements, Taylor, and Michalek extracted LaBoy from his cell and took him to the shower room to strip-search him. (*Id.*, ¶ 28.)

Clements performed the strip search without the other officers. (*Id.*, ¶ 29.) Clements conducted the strip search in what LaBoy deemed to be an "aggressive manner." (*Id.*) LaBoy found the strip search to be egregious because Clements ordered him "to actually split my butt cheeks open in a fashion that I was uncomfortable with, you know, and, like, in an aggressive manner." (*Id.*) LaBoy objected, as he wanted just to "squat and cough," which was "normally the routine." (*Id.*) Nonetheless, Clements insisted that LaBoy bend over "like if I was hiding something." (*Id.*) Afterwards, Defendants searched LaBoy's personal property in his cell, but not his cellmate's. (*Id.*, ¶ 30.)

On November 14, 2014, LaBoy was transferred to the Pontiac Correctional Center ("Pontiac"). (Defts. SOF, ¶ 32.) That same day, Officer Shelvin at Pontiac (who is not a party to this lawsuit) ordered LaBoy's placement in investigative segregation. (Defts. SOF, ¶ 33.) Shelvin never spoke to or interviewed LaBoy in connection with the investigation. (Pltff. Response to Defts. L.R. 56.1 Statement, ¶ 4-9.)

Once an inmate is transferred to another facility, Stateville's investigators have no role in deciding his or her placement status. (Clements Aff., ¶ 13.)

LaBoy did not receive a disciplinary report after correctional officials concluded their investigation. (*Id.*) Instead, he received a "Notice of Administrative Detention Placement Review." (*Id.*; *see also* Plaintiff's Exhibit E.) The report recommended that LaBoy be placed in administrative detention "due to his continuous involvement in attempting to unify and organize

the Latin Folks STGs in IDOC." (*Id.*) The report further stated: "Inmate LaBoy consistently attempts to build structure amongst the Latin Folks and their allies and threatens those inmates who are unwilling to do so." (*Id.*) The report continued, "By refusing to give up his affiliation and activity with the Spanish Cobras STG (a faction of the Latin Folks umbrella), Inmate LaBoy remains a threat to the safety, security and orderly management of IDOC." (*Id.*)

Defendants Clements and Michalek have filed affidavits expressly denying that they ever took any action against LaBoy with the intent of retaliating against him for his grievances. (Clements Aff., ¶ 17; Michalek Aff., ¶ 15.)[5] Notwithstanding Defendants' protestations, LaBoy insists that he has "document proof Defendants not only retaliated but also harass[ed] Plaintiff." (Pltff. Response to Defts. L.R. 56.1 Statement, ¶ 6-2) (citing, generally, Exhibits A through E.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[5] Defendant Taylor has not submitted a corresponding affidavit, but the only evidence in the record relating to Taylor is that he was one of three investigators who pulled LaBoy from his cell in November 2014. LaBoy does not fault Taylor for any other act or omission.

323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (citations omitted); *see also Blow v. Bijora, Inc.*, 855 F.3d 793, 797-98 (7th Cir. 2017).

## ANALYSIS

LaBoy argues that Defendant Correctional Officers violated his constitutional rights by harassing him and retaliating against him for filing grievances and for refusing to cooperate in internal affairs investigations. Grieving about prison conditions is protected First Amendment activity. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citing *Watkins v. Kasper,* 599 F.3d 791, 798 (7th Cir. 2010)). Prisoners are entitled to avail themselves of the grievance process without fear of recrimination. *Whitfield v. Snyder*, 263 F. App'x 518, 521 (7th Cir. 2008) (citing *Lekas v. Briley,* 405 F.3d 602, 614 (7th Cir. 2005)); *Watson-El v. Wilson*, No. 11 CV 0740, 2011 WL 2941289, at *6 (N.D. Ill. July 21, 2011). If prison officials retaliate against an inmate for filing grievances, they violate the inmate's First Amendment rights. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015); *Lekas,* 405 F.3d at 614; *Watson-El*, 2011 WL 2941289, at *6. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution … even if the adverse action does not independently violate the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To prevail on a retaliation claim, a prisoner must show that the defendants' actions were serious enough to deter future protected speech. *See, e.g., Santana*

*v. Cook Cty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009).

At the summary judgment stage of a retaliation action, an inmate plaintiff must present evidence permitting a reasonable jury to conclude that: (1) he engaged in activity protected under the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) his First Amendment activity was at least a motivating factor in Defendants' decisions. *See Perez,* 792 F.3d at 783 (7th Cir. 2015) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Laboy v. Pounovich*, No. 13 CV 4882, 2016 WL 4245505, at *5 (N.D. Ill. Aug. 11, 2016) (same).

Once the plaintiff makes a *prima facie* showing by establishing these three elements, the burden shifts to the defendants to rebut the causal inference with evidence showing that they would have taken the same action even without any retaliatory motive. *Mays v. Springborn,* 719 F.3d 631, 634 (7th Cir. 2013); *Greene v. Doruff,* 660 F.3d 975, 979 (7th Cir. 2011). If the defendants provide legitimate and non-retaliatory reasons for their actions, then the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus. *See, e.g., Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012) (involving an arrestee's retaliation claim against police officers); *Zellner v. Herrick,* 639 F.3d 371, 379 (7th Cir. 2011) (retaliation claim by dismissed teacher). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner*, 639 F.3d at 379.

In the case at bar, LaBoy has not presented evidence of his *prima facie* case. As noted in preceding paragraphs, the Court is limiting its inquiry to the factual record as outlined in the

parties' Local Rule 56.1 statements. *Cracco*, 559 F.3d at 632; *Beard*, 2012 WL 2930121, at *5. Defendants' Statement of Facts sets forth the underlying reasons for each challenged action, making no reference to LaBoy's grievances. LaBoy's response to Defendants' Statement of Facts merely alludes to his grievances. While LaBoy repeatedly argues the ultimate fact of retaliation, the summary judgment record before the Court is entirely devoid of facts that might establish a nexus between LaBoy's protected activity and Defendants' actions. LaBoy's summary judgment materials do not include such basic information as the dates of the grievances, the nature of the matter being grieved, the identity of any correctional employees about whom LaBoy complained, or the disposition of those grievances.

The Court will address in turn each incident about which LaBoy complains.

## I. Interview and Disciplinary Action in July 2013 Did Not Constitute Retaliation

LaBoy has failed to make a triable showing that his grievances were a motivating factor for Defendant Michalek's actions in July 2013. In this Circuit, to succeed on a retaliation claim, a prisoner must establish that his constitutionally-protected activity was a "motivating factor" for the defendant's challenged actions. *See Devbrow v. Gallegos,* 735 F.3d 584 (7th Cir. 2013); *see also Gray v. Taylor*, 714 F. Supp. 2d 903, 908-09 (N.D. Ill. 2010) ("To establish a prima facie case of retaliation, a prisoner must show that a protected activity was 'at least a motivating factor' in retaliatory action taken against him, i.e., action that would likely deter protected activity in the future") (quoting *Mays v. Springborn,* 575 F.3d 643, 650 (7th Cir. 2009)). In the instant case, LaBoy has pointed to no evidence in the record indicating that he had filed a grievance against Michalek or any other Defendant prior to the July 2013 investigation.

Furthermore, LaBoy's guilty plea in the related disciplinary proceedings effectively precludes his retaliation claim. A prisoner challenging disciplinary action as retaliatory in nature has no tenable claim when he admits to having committed the underlying misconduct. *Whitfield*, 263 F. App'x at 522 (citing *Hasan v. U.S. Dep't of Labor,* 400 F.3d 1001, 1005 (7th Cir. 2005)); *see also McClain v. Leisure*, 192 F. App'x 544, 550 (7th Cir. 2006) (unpublished opinion) (rejecting retaliation claim arising from discipline specifically related to a grievance because the prisoner was punished for making false accusations, not for his exercise of a First Amendment right). Here, LaBoy admitted to investigators both that he was making impermissible three-way calls, and that he was eliciting from his wife information pertaining to the housing placement of other inmates. (Defts. SOF, ¶¶ 38, 39.) Regardless of whether LaBoy was convicted of each and every disciplinary count, he cannot logically argue that the disciplinary action was retaliatory in nature given his admissions. Nor do the facts support LaBoy's contention that internal affairs office "trumped up" the charges. (*See* Plaintiff's Memorandum of Law at p. 7.) LaBoy has failed to establish that he even engaged in constitutionally protected activity, let alone shown that any grievance(s) he may have filed substantially motivated the disciplinary action at issue.

Merely arguing that Michalek's actions were retaliatory in nature is not enough to defeat Defendants' summary judgment motion. In summary judgment motions, "properly supported statements of material fact are deemed to be undisputed unless the opposing party produces admissible, contradictory evidence." *Huon v. Mudge*, 597 Fed. App'x 868, 870 (7th Cir. 2015) (unpublished opinion) (citing Fed. R. Civ. P. 56(e)(2); *Tindle v. Pulte Home Corp.*, 607 F.3d 494, 495-96 (7th Cir. 2010); *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510-11 (7th Cir.

2010)). If, as LaBoy proclaims, he has "document proof" of Defendants' retaliation and harassment, now was the time to produce it.

Moreover, it is not the role of the Court to comb the record for evidence to make a party's case for him. District courts are not required to "scour the record looking for factual disputes" or "piece together appropriate arguments." *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015); *see also Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1066 (N.D. Ill. 2015). Put differently, "[w]e are not required to scour through hundreds of pages … in order to verify an assortment of facts, each of which could be located anywhere [in the evidence submitted]." *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015). "As we have cautioned time and again, "judge are not like pigs, hunting for truffles buried in the record." *Id.* (citations and internal punctuation omitted). In the absence of any documentation whatsoever demonstrating that Michalek initiated an investigation and imposed discipline in response to a grievance, Defendants are entitled to judgment as a matter of law on this claim.

## II.     Questioning Plaintiff about a Possible Gun at Stateville Was Not Retaliatory

Even viewed in the light most favorable to LaBoy, the record does not support a reasonable inference that Clements was engaging in harassment or retaliation when he questioned LaBoy, presumably among other inmates, on an unspecified date to ask about the possibility of the smuggling of a gun into the institution.

Under IDOC rules, inmates must fully assist in prison investigations, and may be punished for refusing to cooperate. *See* 20 Ill. Admin. Code, § 504, Table A (110). In fact, Defendants' fundamental role as intelligence investigators specifically entails interviewing inmates and weeding out prohibited gang activities. (Defts. SOF, ¶¶ 50-51.) Prison investigators are not

unlike police detectives—an essential part of their job is to interrogate suspects and question potential witnesses.  To combat gang activity, Defendants regularly conduct inmate interviews—usually at least once a day.  (*Id.*, ¶¶ 52, 54, 75, 76, 77.)  Defendants do not deny that at least Clements interviewed LaBoy on "a number of occasions" concerning STG activity while LaBoy was incarcerated at the Stateville.  (Defts. SOF, ¶ 73, 78.)  The Court is skeptical that calling an inmate into the Internal Affairs Office for questioning about STG activities amounts to an official action serious enough to deter future protected speech.  *See Santana*, 679 F.3d at 622.

According to Clements, his intelligence-gathering led him to conclude that LaBoy was involved in STG activity at Stateville.  (Clements Aff., (*Id.*, ¶¶ 18, 20.)  LaBoy flatly denies being a gang member.  *See* footnote 2.  But that issue is not outcome-dispositive.  A court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative. *See, e.g., Montgomery v. Am. Airlines, Inc.,* 626 F.3d 382, 389 (7th Cir. 2010); *Gurley v. Johnson*, No. 14 CV 1009, 2015 WL 4148668, at *3, n.1 (N.D. Ill. July 8, 2015).  Consequently, the Court need not decide whether LaBoy is actually a gang member.  What matters is that Clements has produced evidence showing that he subjectively *believed* LaBoy to have knowledge of gang activity at the prison.  LaBoy's admission that he had his wife conducting internet searches to determine the housing placement of other inmates supports the reasonableness of this belief. Clements has provided a facially valid, non-retaliatory reason for speaking to LaBoy on multiple occasions in order to learn about STG plots.

LaBoy has failed to carry his burden of showing that Defendants' proffered explanation is pretextual.  As noted in previous paragraphs, at the summary judgment stage, a plaintiff can no longer rest on the allegations in his complaint.  In responding to a motion for summary judgment,

a party may not rest on its pleadings, but must affirmatively show with "competent evidence of a type otherwise admissible" that there is a genuine issue for trial. *Rutledge v. City of Chicago*, 652 F. App'x 466, 468 (7th Cir. 2016) (unpublished opinion); *Crockwell v. Dart*, No. 15 CV 0825, 2016 WL 4493456, at *5, n.11 (N.D. Ill. Aug. 26, 2016). Defendants have submitted evidence explaining why they would have interviewed LaBoy. Without an additional Statement of Facts from LaBoy setting forth some sort of chronology of events from which retaliatory animus could arguably be inferred, he has not stated even a *prima facie* case of retaliation, much less shown that Defendants' articulated reasons were pretextual.

## III.  Plaintiff's Transfer from C-House to F-House Was Non-Retaliatory

LaBoy has neither stated facts nor submitted evidence tending to show that his ensuing move to a different tier violated his constitutional rights. The evidence suggests that prison officials moved LaBoy from a "low aggression" unit to a "high aggression" tier because they supposed him to have knowledge of and/or involvement in someone bringing a gun into the facility. Without any evidence to support his charge of retaliation, LaBoy is asking the Court to speculate about a possible retaliatory motive, but "speculation may not be used to manufacture a genuine issue of fact." *Williams v. Raemisch*, 545 F. App'x 525, 528-29 (7th Cir. 2013) (citing *Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008) (*inter alia*)); *see also Devbrow,* 735 F.3d at 588 ("Even though [plaintiff's] verified complaint alleges retaliation, his speculation regarding the officers' motive cannot overcome the contrary evidence that [the officers'] actions were benign.").

In *Springer*, parents complained about a high school coach. Following their interaction with school officials, the school district took steps that the parents interpreted as retaliatory. 518

F.3d at 480.   The Seventh Circuit affirmed summary judgment for the school district, finding that there was no factual underpinning for finding that a "handful of normal events" were retaliatory in nature.   *Id.* at 480, 484.   The Court of Appeals reasoned that there was a "*dispute* [only] in the generic sense"—while the parents argued that retaliatory motives fueled the school's actions, and school officials assured the court that they had made policy decisions based on factors wholly unrelated to the parents' complaints, "the disagreement center[ed] on the parents' speculation about the school's retaliatory motives," which was not enough to defeat summary judgment.   *Id.* at 480, 484 (emphasis in original).

Similarly, in *Devbrow*, the Court of Appeals found that the trial court had properly granted summary judgment on the basis that the prisoner plaintiff had failed to offer evidence that would allow a finding that prison officials had confiscated his legal materials to retaliate against him for suing them.   735 F.3d at 588.   The evidence in that case showed only that prison officials removed the plaintiff's excessive legal materials to eliminate a fire hazard and to make it easier for officials to conduct searches and inventories, and not to retaliate against him.   *Id.* at 588. Here, in the absence of any evidence indicating some causal connection between LaBoy's grievances and his cell change, all LaBoy can offer a jury is speculation about retaliatory animus. Speculation, however, is not enough to withstand a motion for summary judgment supported by contrary evidence.

The record supports a finding, at worst, that correctional officials (whether Defendants or others) had *no* reason to transfer LaBoy to a different tier.   But prisoners do not possess a protected liberty interest in their classifications or placement.   *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Lekas*, 405 F.3d at 609-10; *Taylor v. Waterloo*, No. 07 CV 6644, 2009 WL 2589509, at *7

(N.D. Ill. Aug. 18, 2009) (citations omitted).  LaBoy has failed to demonstrate that there is a triable issue as to whether Defendants moved him to a different tier to punish him for exercising his First Amendment rights.

**IV.    Placing Plaintiff in Segregation to Protect Him Did Not Amount to Retaliation**

LaBoy's placement in investigative segregation on February 5, 2014, in order to protect him from harm did not violate his constitutional rights.   No due process was required because LaBoy had no protected liberty interest in remaining in the general population.   *See Isby v. Brown*, 856 F.3d 508, 524-25 (7th Cir. 2017); *Lekas*, 405 F.3d at 607.   Prisoners generally do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary. *See Sandin*, 515 U.S. at 483-86; *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009).   Discretionary segregation, meaning segregation "imposed for administrative, protective, or investigative purposes," does not implicate the Fourteenth Amendment.   *Townsend v. Fuchs,* 522 F.3d 765, 771-72 (7th Cir. 2008).

To the contrary, because prison officials have a duty to protect prisoners from violence at the hands of others, *see Farmer v. Brennan,* 511 U.S. 825, 833 (1994); *Pinkston v. Madry,* 440 F.3d 879, 889 (7th Cir. 2006), Defendants could have been liable under 42 U.S.C. § 1983 if they had *failed* to take reasonable steps to protect LaBoy from attack and such an assault had occurred. *Dale v. Poston,* 548 F.3d 563, 569 (7th Cir. 2008); *Baird v. Hodge*, 605 F. App'x 568, 571 (7th Cir. 2015) (unpublished opinion).   Clements has stated under oath that he received information that there was an inmate plan to attack LaBoy, and that he therefore took the precautionary measure of placing LaBoy in segregation to protect him from harm.   (Clements Aff., ¶ 19.)   LaBoy has offered no factual basis for questioning Clements' motives.   LaBoy's unsupported assertion that

it somehow "goes against Internal Affairs policy to protect offenders," *see* Pltff. Response to Defts. L.R. 56.1 Statement, ¶ 5-5, is misplaced.

What is more, it is immaterial that LaBoy spent 35 days instead of 30 days in segregation. "In the absence of any liberty or property interest, any purported violation of prison regulations or state laws is not actionable under 42 U.S.C. § 1983." *Shelton v. Melvin*, No. 17 CV 50045, 2017 WL 951241, at *4 (N.D. Ill. Mar. 10, 2017) (citing *Wolfe v. Schaefer*, 619 F.3d 782, 784 (7th Cir. 2010) (citations omitted)). Besides, only "significant hardships atypical of ordinary prison life implicate the Fourteenth Amendment." *Wilkinson v. Austin,* 545 U.S. 209, 222-23 (2005); *Sandin,* 515 U.S. at 484. Even if administrative regulations called for LaBoy's release after 30 days, 35 days was too incremental a deprivation to raise a concern under the Due Process Clause. *See, e.g., Townsend*, 522 F.3d at 766 (no liberty interest implicated in 59 days' administrative segregation); *Lekas*, 405 F.3d at 604-05, 612 (90 days' segregation at Stateville did not trigger liberty interest); *Thomas v. Ramos*, 130 F.3d 754, 761-62 (7th Cir. 1997) (no liberty interest in 70 days' combined administrative and disciplinary segregation). Clements states in his affidavit that he permitted LaBoy's release from segregation as soon as he was satisfied that there was no longer a threat to his safety. (Clements Aff., ¶ 19.) LaBoy has not disputed this assertion. Therefore, this matter does not implicate the Constitution.

Clements' alleged failure to reveal to LaBoy that he was in danger did not render the placement suspect. An inmate has no right to procedural due process before being moved to administrative segregation, and he has no right to call witnesses even when the prison holds a pre-segregation hearing. *Smith v. Akpore*, No. 16-3608, 2017 WL 2367378, at *2 (7th Cir. May 31, 2017) (unpublished opinion) (citing *Wolff v. McDonnell*, 418 U.S. 539, 558, 564-66 (1974)). It

stands to reason that, conversely, authorities had no duty to apprise LaBoy of the confidential information leading to his move to segregation. LaBoy has offered no evidence to rebut Clements' showing that the non-punitive move was legitimate and would have occurred even without a retaliatory motive. *Compare Zellner,* 639 F.3d at 379 (teacher's viewing of pornographic images on a school computer constituted ample, non-retaliatory grounds for his termination, irrespective of his protected union activity); *with Greene*, 660 F.3d at 980 (reversing and remanding prisoner retaliation claim where the defendant issued a "threadbare" conduct report one day after the plaintiff filed a grievance against him).

Moreover, requiring Clements to elaborate on his reasons is not necessary. In the context of inmate disciplinary proceedings, hearing officers may properly rely on the testimony of confidential informants, and "may keep their identities (and information relating to their identities) secret, because 'revealing the names of informants ... could lead to the death or serious injury of ... the informants.'" *Whitford v. Boglino,* 63 F.3d 527, 535 (7th Cir. 1995) (quoting *Mendoza v. Miller,* 779 F.2d 1287, 1293 (7th Cir. 1985)); *see also Collins v. Superintendent*, No. 13 CV 0624, 2013 WL 5655839, at *1 (N.D. Ind. Oct. 16, 2013) (same); *Harris v. Ashby*, No. 11 CV 3074, 2013 WL 4675843, at *1 (C.D. Ill. Aug. 30, 2013) (same; further observing, "If the identity of confidential informants were released, inmates would be reluctant to become informants in the future, decreasing the flow of information critical to maintaining the safety and security of the prison.").

To that end, Defendants confirm that there are "numerous" safety and security concerns posed by the disclosure of an offender's intelligence file, even if prison officials redacted the names of confidential informants. (Defts. SOF, ¶¶ 62-68.) The Court finds that LaBoy is not entitled

to any additional information beyond Clements' unrefuted sworn testimony that he placed LaBoy in segregation for 35 days for the legitimate, non-retaliatory purpose of protecting him from attack.

## V.    Plaintiff's Interview in July 2014 Did Not Reflect Retaliatory Animus

LaBoy has provided no basis for a finding that Clements interviewed him in July 2014 solely to make other inmates think he was a "snitch."    As discussed in prior paragraphs, prison officials had ample authority to question LaBoy at any time, and both parties agree that LaBoy never provided Defendants with any helpful information.

If, as the record reflects, each investigator speaks to between 30 to 40 inmates a month, that means that the three named Defendants together question approximately 105 prisoners a month at Stateville, or 1,260 inmates a year (ignoring some repeat meetings, of course).   The IDOC's website indicates that Stateville currently has a population of 3,458 prisoners.   *See* https://www. illinois.gov/idoc/facilities/Pages/statevillecorrectionalcenter.aspx.    Hence, it must be an everyday occurrence for an inmate to be summoned to the Investigation Unit.    Surely, gang members must realize that prison investigators speak to suspects as well as informants.    And even if STG groups did suspect every inmate who spoke to prison investigators, they do not have the capacity to strike at such a large segment of Stateville's denizens—more than a third of the population is interviewed every year.   Regardless, LaBoy concedes that no harm actually came to him.   (Pltff. Response to Defts. L.R. 56.1 Statement, ¶ 6.)   "[F]ear of harm by itself is not enough to support a constitutional claim."   *Moore v. Monahan*, 428 F. App'x 626, 628 (7th Cir. 2011) (involving civil detainee who balked at having to share his cell with another individual).


## VI.    Plaintiff's Cell Search During a Prison-Wide Shakedown Was Not Retaliatory

LaBoy cannot reasonably argue that correctional officials launched a prison-wide lockdown for the purpose of manufacturing a reason to search his cell. Prisoners have no reasonable expectation of privacy in their prison cells. *See Hudson v. Palmer*, 468 U.S. 517, 525-28 (1984) (overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)). "It is well established that cell searches are constitutionally permissible." *Dobbey v. Randle*, No. 11 CV 3000, 2013 WL 4839319, at *7 (N.D. Ill. Sept. 10, 2013) (citing *Bell v. Wolfish,* 441 U.S. 520, 558-60 (1979); *Hudson*; *Santiago v. Anderson,* 496 F. App'x 630, 633 (7th Cir. 2012)); *cf.* 20 Ill. Admin. Code. § 501.220(b)(1) ("All committed persons and their clothing, property, housing and work assignments are subject to search at any time."). Defendants had authority to search LaBoy's cell at any time, with or without instituting a lockdown.

Defendants state, without contradiction, that there was a "Level-1 institution-wide lockdown" at Stateville on August 13, 2014." (Defts. SOF, ¶ 21.) Defendants additionally report that during such a lockdown, correctional officials would search "many, if not all," inmate cells. (*Id.*, ¶ 22.) While Clements does not recall personally searching LaBoy's cell on that occasion, he admits that he may well have done so if, at the time, LaBoy was a suspect in a prison investigation. (*Id.*, ¶ 24.) Again, the Court need not determine whether LaBoy was involved in illegal gang activity. LaBoy's burden at summary judgment is to present evidence showing that Defendant's stated reasons for their actions were pretextual. LaBoy has not carried that burden.

**VII.    There Is No Evidence that Defendants Interrogated and Strip-Searched Plaintiff for Improper Purposes in November 2014**

Under the circumstances of this case, no reasonable trier of fact could conclude that a third interview over four months after correctional officials had last interviewed LaBoy rose to the level of harassment or constituted retaliation.    Even if LaBoy had stated facts reflecting suspicious timing, a grievance followed by standard protocol (as noted above, Defendants conduct inmate interviews on a daily or near-daily basis), would not, alone, be enough to show retaliatory animus. "[A]s we have stated on many occasions, timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim."    *Springer*, 518 F.3d at 485 (internal punctuation omitted); *see also Lang v. Ill. Dept. of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004) ("Close temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link.").    The only information before the Court is that Defendants called LaBoy into the investigation unit to speak to him on November 6, 2014.    LaBoy does not tie that meeting to any grievance, he does not indicate that Defendants made any reference to a grievance, and he does not suggest that Clements conducted the interview in an abusive manner.

**VIII.    Manner of Related Strip Search Did Not Suggest Retaliation**

For the same reasons, LaBoy is not entitled to relief stemming from the allegedly "aggressive" strip search a few days later.    Prison officials may strip search inmates to look for contraband, weapons, or evidence of inmate diseases and illness.    *Florence v. Board of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 341 (2012).    The Seventh Circuit has acknowledged that strip searches involving the visual inspection of the genital areas are "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing,

repulsive, and signify degradation and submission...." *Campbell v. Miller*, 499 F.3d 711, 718 (7th Cir. 2007) (quoting *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) (internal punctuation omitted)). Notwithstanding the inherent distastefulness of strip searches, the Seventh Circuit has emphasized that "it is difficult to conjure up too many real life scenarios where prison strip searches of inmates could be said to be unreasonable." *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1994); *see also Streeter v. Sheriff of Cook Cty.*, 576 F. Supp. 2d 913, 916 (N.D. Ill. 2008).

Nevertheless, a strip search may violate the Eighth Amendment "where there is no legitimate reason for the challenged strip-search or the manner in which it was conducted." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Furthermore, correctional authorities violate the Eighth Amendment when they treat inmates in a way that is "motivated by a desire to harass or humiliate" or "intended to humiliate and cause psychological pain." *King,* 781 F.3d at 897 (quoting *Mays*, 575 F.3d at 649); *see also Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (vacating Section 1915A dismissal of male prisoner's Eighth Amendment claim that he was strip-searched in view of female guards in a humiliating manner). In assessing the reasonableness of any search, the Court must balance "the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559; *Campbell*, 499 F.3d at 716; *Zboralski v. Sanders*, No. 06 CV 3772, 2010 WL 3024885, at *6 (N.D. Ill. July 29, 2010).

Based on these criteria, there is no triable issue concerning whether the challenged search in this case was constitutional under the facts because there is no evidence in the record that Defendants were motivated by a desire to humiliate LaBoy or that there was no legitimate reason

for the strip search. To clarify, on November 6, 2014, Defendants, who were intelligence officers, called LaBoy into the investigation unit to question him, and a few days later, they took him to a prison shower room, where Clements ordered him to strip. (Defts. SOF ¶¶ 27, 28.) Afterwards, Defendants searched LaBoy's property in his cell. (*Id.*, ¶ 30.) Based on Defendants' actions, former interactions with LaBoy, and the officers' belief that LaBoy was involved in STG activities, it is likely that prison officials suspected LaBoy of possessing contraband or engaging in wrongdoing. There is no evidence in the record suggesting otherwise. Further supporting the reasonableness of the challenged search, Clements conducted the search of LaBoy alone, in a private shower, to protect his privacy. (*Id.*, ¶ 29.)

Although LaBoy characterizes the search as "aggressive," his depiction does not describe an unduly invasive search. LaBoy notes that the "normal routine" is for inmates simply to "squat and cough," but that Clements ordered him "to actually split my butt cheeks open in a fashion that I was uncomfortable with, you know, and, like, in an aggressive manner," and that he bend over. (Defts. SOF ¶¶ 28-30.) In addition, LaBoy testified that no one touched him while he was strip-searched. (R. 43-2, Ex. B, 10/20/16 LaBoy Dep., at 67-68.) The fact that most officers typically conduct visual strip searches in a perfunctory manner, while Clements acted as if LaBoy were "hiding something" (*Id.*, ¶ 29), is precisely the point—despite LaBoy's assertion that he was not engaged in misconduct, prison investigators plainly believed otherwise. (*Id.*) The evidence in the record does not support a finding either that Clements ordered LaBoy to submit to the search out of spite, or conducted the strip search in an unreasonable manner.

## IX. Plaintiff Has Provided No Evidence to Support His Claim that He was Transferred to another Facility for Retaliatory Reasons

Correctional officials' failure to find any incriminating evidence on LaBoy's person or in

his cell did not rule out his transfer to the Pontiac Correctional Center.  An inmate has no constitutionally protected interest in choosing his place of confinement.  *Meachum v. Fano,* 427 U.S. 215, 225 (1976); *Knox v. Wainscott*, No. 03 CV 1429, 2003 WL 21148973, at *8 (N.D. Ill. May 14, 2003); *Obriecht v. Bartow*, No. 05 CV 0639, 2005 WL 1458214, at *1 (E.D. Wis. June 20, 2005) ("A state prisoner has no federal or constitutional right to choose the correctional facility where he will serve his sentence").  Prison officials may transfer an inmate "for any constitutionally permissible reason or for no reason at all."  *Knox*, 2003 WL 21148973, at *8 (citing *Meachum,* 427 U.S. at 225 (*inter alia*)); *see also Williams v. Faulkner,* 837 F.2d 304, 309 (7th Cir. 1988) ("absent a constitutional, statutory, or regulatory bar, "a prisoner may be transferred for any reason, or for no reason at all."); *Moss v. Westerman*, No. 04 CV 0570, 2008 WL 5272174, at *4 (S.D. Ill. Dec. 17, 2008) (citation omitted).

In the case at bar, LaBoy's transfer to Pontiac on November 15, 2014, almost immediately followed his interrogation, strip search, and cell search.  Although the record does not indicate who ordered the transfer, the Court will assume for purposes of the motion that Defendants were behind the move.  Where a prisoner is transferred "on suspicion of violating prison policy, and not for exercising a constitutionally protected right," the transfer cannot be deemed retaliatory in nature.  *Knox*, 2003 WL 21148973, at *8 (citation omitted).  Here, viewing the facts in the light most favorable to LaBoy, no reasonable person would see retaliation.  Rather, the only logical inference from the facts before the Court is that correctional officials suspected LaBoy of engaging in some sort of proscribed activity.  The Court recognizes that intelligence investigators were evidently unable to find any contraband in LaBoy's possession.  Nonetheless, while investigators

may have been unable to marshal enough evidence to warrant disciplinary action, no constitutional protection barred LaBoy's transfer to another correctional center based on suspicion alone.

## X. There Is No Evidence that Defendants Were Involved in Any Action Taken Against Plaintiff at a Different Prison

Finally, LaBoy cannot hold Defendants responsible for any IDOC actions or decisions after he was transferred to the Pontiac Correctional Center. LaBoy has provided no evidence establishing any Defendant's direct, personal involvement. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). Nor has LaBoy indicated that the alleged violation of his constitutional rights occurred at the direction of the named Defendants. *See Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017); *Minix*, 597 F.3d at 833-34. Section 1983 is premised on the wrongdoer's personal responsibility; therefore, an individual cannot be held liable in a civil rights action unless he caused or participated in an alleged constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012).

The record does not support a finding that Defendants were responsible for events that occurred at the Pontiac Correctional Center. An officer at the Pontiac Correctional Center (Shelvin, who is not a named Defendant) ordered LaBoy's placement in investigative segregation. (Defts. SOF, ¶ 33.) An Administrative Detention Review Board issued LaBoy a "Notice of Administrative Detention Placement Review." That report advised LaBoy that he stood accused of continued affiliation with the Spanish Cobras STG, and of threatening to injure inmates unwilling to further the gang's agenda. (*Id.*) It may be that the named Defendants initiated the investigation, but LaBoy has given the Court no reason to discredit Defendant Clements' affidavit stating that investigators would have stopped focusing on LaBoy once he left Stateville. (Clements Aff., ¶ 13.)

In sum, when viewing the summary judgment record and all reasonable inferences in the light most favorable to LaBoy, no reasonable trier of fact could find that Defendants either retaliated against him for his grievances, or improperly punished him for failing to "play ball" (Plaintiff's Memorandum of Law at p. 4.) with prison investigators. The only reasonable inference from the summary judgment record is that Defendants discredited LaBoy's avowals that he was not a gang member, was not involved in STG activity, and that he knew nothing about gang doings.

## CONCLUSION

For all of the foregoing reasons, the Court finds that there is no genuine dispute as to any material (that is, outcome-dispositive) fact. The Court further concludes that Defendants are entitled to judgment as a matter of law. In his complaint and opposing brief, LaBoy alleges a campaign of "constant" (Plaintiff's Memorandum of Law at p. 4) harassment against him in response to his grievances. The record, however, reveals discrete incidents that were separated by weeks and months. More importantly, LaBoy has failed to rebut Defendants' justification for each challenged action with evidence of his own. Defendants have established that retaliatory animus was not a substantial or motivating factor in the actions they took and decisions they made, or to link these actions to any alleged grievances. Therefore, the Court grants Defendants' motion for summary judgment [41]. The Court directs the Clerk to enter final judgment. The status hearing previously scheduled for July 13, 2017, at 8:30 a.m. is vacated.

If LaBoy wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If LaBoy appeals, he will be liable

for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, the Court of Appeals could assess a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal Court without pre-paying the filing fee unless he or she is in imminent danger of serious physical injury. *Id.* If LaBoy seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with the Clerk of this Court. *See* Fed. R. App. P. 24(a)(1).

LaBoy need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. If LaBoy wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). LaBoy must file any Rule 59(e) motion within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The Court cannot extend the time to file a motion pursuant to Rule 59(e). *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Court rules upon the Rule 59(e) motion. *See* Fed. R. App. P. 4(a)(4)(A)(iv). LaBoy must file any Rule 60(b) motion within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must file the motion no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The Court cannot extend the time to file a Rule 60(b) motion. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Court rules on the Rule 60(b)

motion only if the motion is filed within 28 days of the entry of judgment.    *See* Fed. R. App. P.

4(a)(4)(A)(vi).

**Dated:**    July 10, 2017

**ENTERED:**

_____
**AMY J. ST. EVE**
**United States District Court Judge**